## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **KENDRA BARLOW-JOHNSON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-cv-3214** |
| | ) | |
| **THE CENTER FOR YOUTH AND** | ) | |
| **FAMILY SOLUTIONS, HAYLEE** | ) | |
| **MCAFEE in her individual and** | ) | |
| **official capacity, ASHLYN FORE,** | ) | |
| **in her individual and official** | ) | |
| **capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

This matter is before the Court on Defendants The Center for Youth & Family Solutions, Haylee McAfee, and Ashlyn Fore ("Defendants") Motion to Dismiss (d/e 11).  For the foregoing reasons, the Motion (d/e 11) is GRANTED.  Plaintiff's Complaint (d/e 1) is DISMISSED WITH PREJUDICE in its entirety for failure to state a claim.

### I.    BACKGROUND

On October 19, 2022, Plaintiff Kendra Barlow-Johnson ("Plaintiff") filed a six-Count pro se Complaint against Defendants

The Center for Youth & Family Solutions, a not-for-profit child welfare agency, and its two caseworker employees, Haylee McAfee, and Ashlyn Fore ("Defendants").  Count I alleges violation of 42 U.S.C. § 1983 for deprivation of civil rights under the First and Fourteenth Amendments.  Count II alleges violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and Sec. 504 of the Rehabilitation Act.  Count III alleges violation of the Family First Prevention Act (FFPSA), 42 CFR § 1356.21(d).  Count IV alleges violation of the False Claims Act, 31 U.S.C. §§ 3729–3733.  Count V alleges violation of the Bill of Rights, 42 U.S.C. § 9501.  Count VI alleges defamation in violation of 28 U.S.C. § 4101.

On December 12, 2022, Defendants moved to dismiss all Counts for lack of federal question subject matter jurisdiction pursuant to Rule 12(b)(1), as well as for failure to plausibly state a claim for relief upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (d/e 11).  On December 29, 2022, Plaintiff filed her Response (d/e 14).

## II.   LEGAL STANDARD

Defendant has moved to dismiss Plaintiff's pro se Complaint under both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted).  "When a motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first."  Rizzi v. Calumet City, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998) (citing Bell v. Hood, 327 U.S. 678, 682 (1946)).  If the Court dismisses Plaintiff's Complaint for lack of subject matter jurisdiction, the accompanying Rule 12(b)(6) defenses become moot and need not be addressed.  Id.

The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether a factual or facial challenge has been raised.  Silha v. ACT, Inc., 807 F.3d 169, 173 (7th Cir. 2015).  A factual challenge contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient.  Id. at 444 (emphasis in original).  Id. (citing Apex Dig., Inc. v. Sears, Roebuck

& Co., 572 F.3d 440, 443 (7th Cir. 2009)).  If, as here, a defendant

raises a factual challenge, the court may "look beyond the pleadings

and view any evidence submitted to determine if subject matter

exists."  Id.  Moreover, the "presumption of correctness" usually

attributed to a complaint's allegations "falls away on the

jurisdictional issue once a defendant proffers evidence that calls the

court's jurisdiction into question."  Saperstein v. Hager, 188 F.3d

852, 856 (7th Cir. 1999).  Ultimately, the plaintiff must establish

the existence of subject matter jurisdiction by competent proof.  Id.

(citing Commodity Trend Serv., Inc. v. Commodity Futures Trading

Comm'n, 149 F.3d 679, 685 (7th Cir. 1998)).

On the other hand, a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6) challenges the sufficiency of the complaint.

Christensen v. Cty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007).  A

complaint must contain "a short and plain statement of the claim

showing the pleader is entitled to relief" that puts the defendant on

notice of the allegations.  Higgs v. Carver, 286 F.3d 437, 439 (7th

Cir. 2002) (quoting Fed. R. Civ. P. 8(a)(2)).  The court accepts all

well-pleaded facts alleged and draws all possible inferences in the

plaintiff's favor.  Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

The complaint must put forth plausible grounds to demonstrate a claim for relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plausible claim is one from which the court is able to draw reasonable inferences that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  Additionally, the complaint must raise a reasonable expectation that discovery will reveal evidence of liability.  Id. at 663; Twombly, 550 U.S. at 545.  A complaint merely reciting a cause of action or conclusory legal statements without support is insufficient.  Iqbal, 556 U.S. at 663.

## III.  FACTS

The following facts are alleged in Plaintiff Kendra Barlow-Johnson's ("Plaintiff") Complaint and are accepted as true at the motion to dismiss stage.

In October 2021, Plaintiff Kendra Barlow-Johnson gave birth to C.D. at Springfield Memorial Hospital.  d/e 1, p. 6, ¶¶ 2, 3.  In January 2021, the Illinois Department of Children and Family Services (DCFS) had performed an investigation into Plaintiff and

had found a "significant risk for harm" due to DCFS's concerns that Plaintiff suffered from a mental health disorder.  d/e 1, p. 6, ¶ 5. While the Plaintiff does not elaborate on the January 2021 DCFS investigation, the Court presumes that the investigation relates to Plaintiff's other children.  On October 24, 2021, a phone call was placed to the DCFS abuse hotline.  d/e 1, p. 6, ¶ 4.  The caller stated that Plaintiff "needed mental help" and that "the courts and the judge" instructed the caller and her husband to contact Joe Dabrowski to report Plaintiff's pregnancy and subsequent delivery. Id.  On October 24, 2021, DCFS launched an abuse and neglect investigation at Springfield Memorial Hospital after Plaintiff gave birth to C.D.  d/e 1, p. 6, ¶ 6, 7.  Plaintiff alleges that on the same day, Springfield Memorial Hospital "seized" C.D.  Id.  On October 25, 2021, DCFS took protective custody of C.D.  Id.  On November 8, 2021, Defendant The Center For Youth and Family Solutions (the "Center") was assigned to manage Plaintiff's case through a contract agreement with DCFS.  d/e 1, p. 6, ¶ 8.  Plaintiff alleges that Defendants neglected to perform statutorily mandated duties.  d/e 1, p. 6, ¶ 9.  Specifically, Plaintiff alleges that Defendants Hayley McAfee and Ashlyn Fore, caseworkers at the Center, neglected to

make reasonable efforts to prevent C.D. from being placed outside the home in foster care, despite Plaintiff agreeing to relocate to her mother's home, which has secured access, security surveillance, and on-sight security personnel.  d/e 1, p. 6, ¶¶ 10, 11.

Plaintiff also alleges that she was deprived of constitutional rights and civil liberties due to the perception that she has a mental illness.  d/e 1, p. 6, ¶ 14.  Plaintiff alleges that she has not been diagnosed with a mental health disorder, does not have a medical history of mental illness, and does not suffer from delusions.  d/e 1, p. 6, ¶¶ 12, 13.  Plaintiff asserts that she is not a danger to anyone and has always been capable of meeting the needs of her children. d/e 1, p. 6, ¶ 13.  Plaintiff alleges that the Center's "unsubstantiated concerns for mental illness, based on speculation, stereotypes, and generalizations about mental health disorders rather than facts, resulted in Plaintiff's family being unnecessarily separated."  d/e 1, p. 6, ¶ 15.  Plaintiff also alleges that the Center's implemented barriers to family visitations based on its perception that Plaintiff had a disability, which prevented visitations with C.D. from taking place.  d/e 1, p. 6, ¶ 16.

Plaintiff also alleges that Defendants failed to conduct the "initial and ongoing assessments that are required of permanency workers in case management," and that the Center's "permanency worker copied and pasted the erroneous assessment" from the January 2021 DCFS investigation.  d/e 1, p. 7, ¶ 17.

Plaintiff alleges that she has completed five mental health evaluations by three different facilities that found no mental health issues and no medical need for services.  d/e 1, p. 7, ¶ 18.  Plaintiff alleges that the Center's worker presented, documented, and communicated subjective opinions and false information about Plaintiff's mental health status, preventing family unification.  d/e 1, p. 7, ¶ 19.

Plaintiff also alleges that the Center's permanency worker McAfee and supervisor Fore omitted relevant information by neglecting to document significant events and exculpatory evidence from the case record and presented false information to the Court. d/e 1, p. 7, ¶ 20.

Plaintiff also alleges that the service plan created by the Center's permanency worker was not based on accurate information and that Plaintiff was not involved in the development of the service

plan.  d/e 1, p. 7, ¶¶ 21, 22.  Plaintiff also asserts that she was not permitted to choose her own service providers, she was not treated with dignity and respect, she was not informed, she was not provided appropriate services and not provided with information for filing grievances, and that her requests for a change in case managers or agencies were rejected by the Center.  d/e 1, p. 7, ¶¶ 23–27.

## IV.   ANALYSIS

### A. The <u>Younger</u> Abstention Doctrine Requires The Court to Abstain From Interfering with Plaintiff's Ongoing State Court Proceedings.

Defendants argue pursuant to Rule 12(b)(1) that the application of <u>Younger v. Harris</u> abstention doctrine is appropriate here because all of Plaintiff's allegations involve her parental rights to her child, which is the subject of the juvenile proceedings currently pending in Sangamon County in Illinois State Court.  401 U.S. 37 (19971); d/e 12, p. 6.  The Court agrees.

<u>Younger</u> applies in only three limited categories of cases: (1) criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that promote the state's ability to perform its judicial functions.  <u>New Orleans Pub. Serv., Inc. v. Council of New</u>

<u>Orleans</u>, 491 U.S. 350, 368 (1989).  If applicable, the <u>Younger</u> abstention doctrine requires federal courts to abstain from interfering with ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate.  <u>Green v. Benden</u>, 281 F.3d 661, 666 (7th Cir. 2002).

In the instant case, abstention is appropriate.  Plaintiff's ongoing juvenile court proceedings brought by the State of Illinois implicate Illinois' important interest in child custody and are still pending in Sangamon County.[1]  <u>Garner v. Univ. of Chi. Med. Ctr.</u>, No. 16 C 10108, 2016 WL 11773850, at *3 (N.D. Ill. Nov. 16, 2016) (citing <u>Borum v. Bonk</u>, No. 99 C 2069, 2000 WL 263958, at *1–2 (N.D. Ill. Feb. 29, 2000)) ("Child custody and placement proceedings traditionally are considered as areas involving important state interests, and therefore are the province of state courts."); <u>see</u>

---

[1] The Court takes judicial notice of the orders entered in the Circuit Court of Sangamon County regarding Plaintiffs' custody of child C.D. in case number 21 JA 129.

Moore v. Sims, 442 U.S. 415, 423 (1979) (holding that Younger applies to the temporary removal of a child in a child-abuse context).  Additionally, because Plaintiff may raise constitutional issues during custody proceedings and on subsequent judicial review, she has a sufficient opportunity to address all such constitutional claims.  See Garner, No. 16 C 10108, 2016 WL 11773850, at *3.

Furthermore, no extraordinary circumstances exist that would render abstention inappropriate.  Plaintiff claims extraordinary circumstances exist here, specifically, the "gravity of th[e] situation, the federal question, the irreparable harm sustained by the Plaintiff's family, the bad faith intent of these proceedings, and the history of proceedings."  d/e 14, p. 6.  A district court should not abstain under Younger in the limited circumstances where: "(1) the state proceeding is motivated by a desire to harass or is conducted in bad faith, (2) there is an extraordinarily pressing need for immediate equitable relief, or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions[.]"  Stroman Realty, Inc. v. Martinez, 505 F.3d 658, 664 (7th Cir. 2007) (citing Jacobson v. Village of Northbrook Mun.

Corp., 824 F.2d 567, 569–70 (7th Cir.1987)).  The party claiming

extraordinary circumstances must demonstrate their existence.

Green, 281 F.3d at 667.

Plaintiff argues that bad faith exists in the state proceedings

for a litany of reasons, including that she was "coerced and

manipulated" into a voluntary safety plan; emergency orders were

granted pursuant to the Illinois Domestic Violence Act, with "no

claim of abuse"; "custody [] and guardianship [were] decided out of

plenary proceedings"; she was not appointed counsel; "exculpatory

evidence was not allowed"; and "a record of proceedings [was] not

made available."  d/e 14, p. 10.  However, the Court finds no

indication that the state juvenile proceedings were conducted in

bad faith.  Plaintiff must demonstrate that state prosecution "was

brought in bad faith for the purposes of retaliating for or deterring

the exercise of constitutionally protected rights."  Collins v. Cty. of

Kendall, Ill., 807 F.2d 95, 98 (7th Cir. 1986) (internal citations

omitted).  Mere allegations and conclusions of bad faith are

insufficient to warrant the bad faith exception.  Crenshaw v.

Supreme Court of Ind., 170 F.3d 725, 729 (7th Cir. 1999).  The

instances of alleged bad faith described by Plaintiff do not indicate

that Illinois initiated its juvenile proceeding with an intent to retaliate or deter Plaintiff's constitutional rights.

Plaintiff also alleges that her family will suffer irreparable harm. However, Plaintiff's Complaint does not, at least on its face, request the direct entry of a child custody order. Instead, Plaintiff seeks a judgment against Defendants whose actions allegedly paved the way for the state court proceeding for compensatory and punitive damages. See d/e 1, p. 4. Plaintiff also cites to the detrimental effect that separation of mother and child has on the familial unit. d/e 14, p. 9. Allegations of irreparable harm alone, however, are insufficient to satisfy the "extraordinary circumstances" exception in Younger. 401 U.S. at 46. In addition to establishing both "great and immediate" harm, Plaintiff must also show that the threat to her rights under federal law cannot be adequately adjudicated in the state proceeding. Younger, 401 U.S. at 46. Plaintiff has not shown that the state court cannot adequately address her claims and has failed to show extraordinary circumstances which would distinguish this case from other child

custody cases in which federal courts routinely apply.  See Moore,
442 U.S. at 423.

Although Plaintiff does not directly seek the custody of her
child C.D. in the instant case, Younger is appropriate here because
the resolution of the claims for monetary damages requires the
Court to question the validity of the underlying state proceedings,
which constitute the substance of Plaintiff's claims.  The Court
should normally stay the instant case until the state proceeding is
resolved because Plaintiff cannot bring her damages claim in the
state juvenile proceeding.  Green, 281 F.3d at 667; see Nicole K. by
next friend Linda R. v. Stigdon, 990 F.3d 534, 537 (7th Cir. 2021)
(when Younger applies, a federal court has discretion to put any
federal proceeding on hold while a state works its way through an
administrative process that was under way before the federal suit

began).  However, the Court finds dismissal appropriate here because Plaintiff's Complaint also fails to state a claim.

## B. Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can Be Granted Pursuant to Rule 12(b)(6).

Each of Plaintiff's claims in her Complaint fail to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court addresses each Count below.

### 1. Count I is Dismissed Because Defendant the Center is Not a State Actor.

Plaintiff brings Count I under 42 U.S.C. § 1983, alleging deprivation of civil rights under the First and Fourteenth Amendments.  To establish a claim under Section 1983, a plaintiff must show that the defendant: (1) acted under the color of state law and (2) deprived the plaintiff of a constitutionally protected right. Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006).

Plaintiff cannot state a cause of action in Count I under 42 U.S.C. § 1983 because Defendants are not "actors under the color of state law."  See Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7, 570 F.3d 811, 815 (7th Cir. 2009) ("[The] Fourteenth Amendment[ ] to the Constitution protect[s] citizens from conduct by the government, but not from conduct by private actors, no

matter how egregious that conduct might be.").  Section 1983 may be brought against government employees, and under certain circumstances, non-government employees who are employed by a private entity but provide services to the government.  Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 823–27 (7th Cir. 2009).

Defendant Center is a private, not-for-profit Illinois child welfare agency that works for DCFS through a contractual agreement.  Plaintiff alleges that the Center is a state actor by implying that the existence of a contractual agreement makesthe Center into a state actor.  d/e 14, p. 15.  However, the receipt of public funds alone is insufficient to transform otherwise private actions into actions of the State.  Doe By and Through G.S. v. Johnson, No. 92 C 7661, 1993 WL 75125, at *4 (N.D. Ill. March 15, 1993) (citing Blum v. Yaretsky, 457 U.S. 991, 1011 (1982) and Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982)).  In Doe, the Northern District of Illinois found that a private, not-for-profit social service agency is not a state actor simply because the agency assists DCFS in placing children into foster care and receives funding from DCFS for it.  Id. at *4.  Plaintiff has failed to properly allege that Defendant Center, and by extension, its employees, is a

state actor.  As a result, the Court does not reach Defendant's other arguments.

Although the Court has the discretion to permit Plaintiff to file an amended complaint, it is unnecessary when, as here, the Court finds that any amendment to the claim raised in Plaintiff's pleading would be futile.  Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1025 (7th Cir. 2013); see also Gonzalez-Koeneke v. West, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts, nevertheless, 'have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.' ") (quoting Arreola v. Godinez, 546 F.3d 788, 796 (7th Cir. 2008)).  Accordingly, Plaintiff's allegations in Count I asserting violations of 42 U.S.C. § 1983 fail to state a claim and are dismissed with prejudice.

### 2. Count II is Dismissed Because Defendant Center is Not a Public Entity.

Plaintiff brings Count II under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* and Section 504 of the Rehabilitation Act of 1973 (the Rehabilitation Act), 29 U.S.C. §

791, *et seq.*  Specifically, Plaintiff alleges that she was deprived of constitutional rights and civil liberties due to the "perceptions of a mental illness," which resulted in the separation of her and her child C.D.  d/e 1, p. 6.

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III."  Tennessee v. Lane, 541 U.S. 509, 516–17 (2004).  While the Plaintiff's Complaint identifies Title III of the ADA, d/e 1, p. 3, as Defendants correctly argue, Title III only authorizes injunctive relief, which Plaintiff does not seek.  Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1075 (7th Cir. 2013); d/e 1, p. 4 (seeking compensatory and punitive damages).  Liberally construing Plaintiff's Complaint, the Court presumes that Plaintiff intended Count II to be brought pursuant to Title II of the ADA.

In the Seventh Circuit, the ADA and Rehabilitation Act are "functionally identical."  Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015).  To state a claim under the ADA and the

Rehabilitation Act, an individual must allege that (1) she is a qualified individual with a disability; (2) she was denied the benefits of the "services, programs or activities of a public entity"; (3) she was denied those benefits or otherwise discriminated against on account of her disability; and for the Rehabilitation Act claim, the additional requirement that (4) the defendant is an entity which receives federal funds.  Carter v. City of Chicago, 520 F. Supp. 3d 1024, 1030 (N.D. Ill. 2021).

Plaintiff cannot state a cause of action in Count II under the ADA or the Rehabilitation Act against Defendants because Defendant Center is not a "public entity."  42 U.S.C. § 12131.  For purposes of the ADA, a "public entity" is a "department, agency, special purpose district, or other instrumentality of a State or States or local government."  Id.  The Center is not a government agency.  Rather, the Center is a not-for-profit Illinois child welfare agency that works for DCFS through a contract agreement to assist DCFS in its statutory duty to administer child abuse prevention and service programs for abused and neglected children and their families in the State of Illinois.  d/e 12, p. 3, Ex. 1, ¶¶ 1, 3.  The "public entity" definition does not include private organizations that

have business or contractual relationships with public entities, and

Plaintiff does not cite any authority for the proposition that a

private entity becomes an "instrumentality of [the] State" merely by

contracting with a public entity for the provision of some services.

42 U.S.C. § 12131.  While the Seventh Circuit has yet to address

this issue, other courts have rejected this interpretation.  See

Edison v. Douberly, 604 F.3d 1307, 1308–10 (11th Cir. 2010) ("a

private corporation is not a public entity merely because it

contracts with a public entity to provide some service"); Maxwell v.

South Bend Work Release Ctr., 787 F.Supp.2d 819, 822 (N.D. Ind.

April 13, 2011) (citing cases).  The Court agrees and finds that

although the Center is in a contractual relationship with DCFS to

further DCFS' goals, the Center itself is not a public entity as

defined by the ADA.

Moreover, Plaintiff has not claimed that Defendant the Center

receives federal funding, which is a requisite to state a claim under

the Rehabilitation Act.  Accordingly, Plaintiff's allegations in Count

II asserting violations of the ADA and the Rehabilitation Act fail to

state a claim and are dismissed with prejudice. See Luevano, 722

F.3d at 1025 (unnecessary to allow amended complaint when any amendment to claim raised in Plaintiff's pleading would be futile).

### 3. Because the Family First Prevention Services Act (FFSA), 42 CFR § 1356.21(d), Does Not Create Enforceable Federal Rights, Plaintiff Cannot State a Cause of Action in Count III.

Plaintiff brings Count III under the Family First Prevention Services Act (FFPSA), 42 CFR § 1356.21(d), which provides that judicial determination regarding reasonable efforts to prevent unnecessary removal of a child from the home be explicitly documented for public agencies to receive Title IV-E funding. Specifically, Plaintiff argues that Defendants McAfee and Fore violated the FFPSA by "neglect[ing] to make reasonable efforts" to prevent infant C.D. from being placed outside of the home in foster care despite alternatives provided by Plaintiff.  d/e 1, p. 6.  Plaintiff also argues that 42 CFR § 1356.21(d) creates a substantive federal right that may be enforced in an action under 42 U.S.C. § 1983. d/e 14, p. 18.

The Court finds that the FFPSA does not contain either an express or implied provision providing a private right of action. Plaintiff does not cite to any provision of the FFPSA that provides

for a private right of action.  The Supreme Court articulated a four-factor test to determine whether an implied right of action exists in a federal statute: (1) whether the plaintiff is among the class of persons intended to benefit from the enactment of the statute; (2) whether there is any evidence of legislative intent to provide or deny a private remedy; (3) whether a private remedy is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law such that it would be inappropriate to infer a federal remedy.  Cort v. Ash, 422 U.S. 66, 78 (1975).  However, the Court has since focused its analysis on whether Congress intended to create a private cause of action.  Saltzman v. Farm Credit Servs. of Mid-America, ACA, 950 F.2d 466, 468 (7th Cir. 1991) (citing Thompson v. Thompson, 484 U.S. 174, 179 (internal citation omitted) ("The intent of Congress remains the ultimate issue . . . and unless this congressional intent can be inferred from the language of the statute, the statutory

structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.").

> The stated purpose of the FFPSA is
>
> to enable States to use Federal funds available under parts B and E of title IV of the Social Security Act to provide enhanced support to children and families and prevent foster care placements through the provision of mental health and substance abuse prevention and treatment services, in-home parent skill-based programs, and kinship navigator services.

Pub. L. No. 115-123, § 50702. As Defendants correctly suggest, FFSA's purpose is to govern funding for States to prevent the placement of children into foster care, and to limit the use of group home placements, not to provide civil remedies for the actions of child welfare agencies. Despite Plaintiff's arguments that Congress has enacted "several laws in response to the harms caused by social policy" and that the laws "are meant to direct those in authority who are unable to direct themselves," d/e 14, p. 19, Plaintiff fails to point to any statutory language or legislative history that raises an inference that Congress intended to create a private right of action through the FFSA. The Court finds that the FFSA does not contain an implied private cause of action. See Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) ("courts may not create [a private remedy],

no matter how desirable that might be as a policy matter"); Statland v. Am. Airlines, 998 F.2d 539, 540 (7th Cir. 1993) ("[C]ourts seldom imply a private right of action where none appears in the statute, for a strong presumption exists against their creation.").

Accordingly, Plaintiff's allegations in Count III asserting violations of the FFPSA fail to state a claim and are dismissed with prejudice.  See Luevano, 722 F.3d at 1025 (unnecessary to allow amended complaint when any amendment to claim raised in Plaintiff's pleading would be futile).

### 4. Count IV is Dismissed Because Plaintiff Fails to Allege Fraud with Particularity, Does Not Bring a *Qui Tam* Action, and Does Not Allege Defendants Presented a False Claim to the Government for Payment.

Plaintiff brings Count IV under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733.  The FCA "makes it unlawful knowingly (1) to present or cause to be presented a false or fraudulent claim for payment to the United States, (2) to make or use a false record or statement material to a false or fraudulent claim, or (3) to use a false record or statement to conceal or decrease an obligation to pay money to the United States."  United States v. Molina Healthcare of Illinois, Inc., 17 F.4th 732, 739 (7th Cir. 2021).  The FCA permits

private citizens, or "relators," to file a civil action on behalf of the
government to recover monies that the government paid on account
of the false claims, referred to as *qui tam* actions.  31 U.S.C. §
3730(b)(1); <u>United States ex rel. Yannacopoulos v. Gen. Dynamics</u>,
652 F.3d 818, 822 (7th Cir. 2011).

Claims under the False Claims Act include four components:
"(1) falsity, (2) causation, (3) knowledge, and (4) materiality."
<u>Molina</u>, 17 F.4th at 740.  To survive a motion to dismiss, the
complaint must allege that (1) defendant made a false claim or
statement to receive money from the government, (2) the violation
proximately caused the alleged injury, (3) defendant knew that the
claim or statement was false, and (4) defendant's misrepresentation
was material to the government's payment decision.  <u>Id.</u> at 739–40.

The Court dismisses Plaintiff's FCA claim for failure to state a
claim for several reasons.  First, because a claim under the FCA
involved fraud, the complaint must overcome a heightened pleading
standard under Rule (b).  To bring a claim under Section
3729(a)(1)(A) or Section 3729(a)(1)(B), a plaintiff must allege
"specific facts demonstrating what occurred at the individualized
transactional level."  <u>Lanahan v. Cty. of Cook</u>, 41 F.4th 854, 861–62

(7th Cir. 2022).  This includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated" to the government."  Id. (cleaned up).  Plaintiff's complaint does not offer any details about the alleged fraud besides a general assertion that Defendants "omitted relevant information from the case record and presented false information to the court." d/e 1, p. 7.  Such a conclusory assertion, without any supporting details or information, fails to satisfy Fed. R. Civ. P. 9(b).

Second, claims for violations of the FCA may only be brought by private actors on behalf of the federal government in a *qui tam* action.  31 U.S.C. § 3730.  The federal government has no monetary interest in Plaintiff's dispute with the Center, and Plaintiff is not seeking to bring this claim on behalf of the government; rather, she appears to bring the claim because she disagrees with how Defendants McAfee and Fore handled her child C.D.'s case.

Third, while Plaintiff alleges that Defendants McAfee and Fore misrepresented information to the court, Plaintiff makes no allegations that Defendants presented a false claim to the government for payment.  See Molina, 17 F.4th at 739.

Accordingly, Plaintiff's allegations in Count IV asserting violations of

the False Claims Act fail to state a claim and are dismissed with

prejudice.  See Luevano, 722 F.3d at 1025 (unnecessary to allow

amended complaint when any amendment to claim raised in

Plaintiff's pleading would be futile).

> ### 5. Because the Mental Health Bill of Rights, 42 U.S.C. § 9501, Does Not Create Enforceable Federal Rights, Plaintiff Cannot State a Cause of Action in Count V.

Plaintiff brings Count V under the Mental Health Bill of Rights,

42 U.S.C. § 9501, which provides:

> It is the sense of the Congress that each State should review and revise, if necessary, its laws to ensure that mental health patients receive the protection and services they require; and in making such review and revision should take into account the recommendations of the President's Commission on Mental Health and [certain recommendations specified in the statute].

42 U.S.C. § 9501.  Specifically, Plaintiff argues that the Center

permanency worker created a service plan based on inaccurate

information, that Plaintiff was not involved in the development of

the service plan, that Plaintiff was not permitted to choose her own

service providers, that Plaintiff was not informed, that Plaintiff was

not provided appropriate services, and that Plaintiff's requests for a

change in case managers was rejected by the Center.  d/e 1, ¶¶ 21–27.  Liberally construing Plaintiff's claim, the Court presumes that Plaintiff intended to argue that 42 U.S.C. § 9501 created a substantive federal right that may be enforced in an action under 42 U.S.C. § 1983.

However, the Mental Health Bill of Rights does not create enforceable federal rights or duties or a private right of action.  See Green v. Lichtstein, No. 00 C 0563, 2001 WL 78915, at *3 (N.D. Ill. Jan. 26, 2001) (citing cases).  Accordingly, Plaintiff's allegations in Count V asserting violations of the Mental Health Bill of Rights fail to state a claim and are dismissed with prejudice.  See Luevano, 722 F.3d at 1025 (unnecessary to allow amended complaint when any amendment to claim raised in Plaintiff's pleading would be futile).

### 6. Count VI Is Dismissed Because Defendants Have Qualified Immunity and the Court Declines to Exercise Supplemental Jurisdiction.

Plaintiff brings Count VI for defamation in violation of 28 U.S.C. § 4101.  Specifically, Plaintiff alleges that Defendants "copied and pasted the erroneous assessment" from the previous DCFS investigation and that Defendant "presented, documented, and

communicated subjective opinion[s] and false information about the claimant[']s mental health status, behavior, action, and statement[s]." d/e 1, p. 7.

Section 4101 does not provide a cause of action for defamation and pertains only to foreign defamation judgments. Section 4101 has no applicability to Plaintiff's case as there is no allegation of a foreign defamation judgment. However, liberally construing Plaintiff's claim, the Court presumes that Defendant intended to bring an Illinois state law claim of defamation.

Under Illinois law, to state a claim for defamation, the plaintiff must allege (1) that the defendant made a false statement concerning her and (2) that the defendant caused an unprivileged publication of that false statement to a third party, (3) which damaged the plaintiff. Kransinski v. United Parcel Serv., Inc., 530 N.E.2d 468, 471 (Ill. 1988). In Plaintiff's Complaint, Plaintiff refers to general defamatory remarks, but fails to specify what remarks allegedly defamed her. The only allegedly defamatory remark Plaintiff identifies is in her Response: "Justin was chasing Kendra with a hammer." d/e 14, p. 22. Plaintiff fails to allege that this was an unprivileged publication to a third party.

Moreover, Defendants enjoy qualified immunity from civil suit. Under Illinois' Abused and Neglected Child Reporting Act (ANCRA), as licensed case workers and a child welfare agency, Defendants are in the class of persons required to report if they have "reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child." 325 ILCS 5/4(a); see d/e 12, Ex. 1, ¶ 5  Under ANCRA, mandated reporters "shall have immunity from any liability, civil, criminal or that otherwise result" from reports made in "good faith." 325 ILCS 5/9.  As mandatory reporters, Defendants have a presumption protecting them from Plaintiff's state tort claims unless Plaintiff can overcome it.  See Sebesta v. Davis, 878 F.3d 226, 231 (7th Cir. 2017).  Plaintiff makes no allegations of bad faith as to any allegedly defamatory statement in her Complaint or her Response.

Furthermore, having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over any state law claim.  28 U.S.C. § 1367(c)(3).  Accordingly, Plaintiff's allegations in Count VI asserting violations of defamation fail to state a claim and are dismissed with prejudice.

## V.   CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (d/e 11) is GRANTED. Plaintiff's Complaint (d/e 1) is DISMISSED WITH PREJUDICE in its entirety for failure to state a claim. Because amendment would be futile, leave to file an amended complaint is not granted. The Clerk is DIRECTED to close this case and enter judgment. All pending motions are DENIED AS MOOT.

**ENTERED: September 8, 2023.**

**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**